IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,

      Petitioner,

v.                                          CIVIL ACTION NO. 2:20-CV-17
                                           (KLEEH)

APPALACHIAN AGGREGATES, LLC,

      Respondent.

## MEMORANDUM OPINION AND ORDER

On November 19, 2021, Respondent Appalachian Aggregates, LLC ("Appalachian") filed a renewed motion for summary judgment [ECF No. 30]. On November 30, 2021, Petitioner Erie Insurance Property and Casualty Company ("Erie") also filed a renewed motion for summary judgment [ECF No. 32]. Erie seeks a declaration from this Court that it is not required to defend or indemnify Appalachian under three insurance policies issued to Flanigan Field Services, LLC ("Flanigan"). Appalachian argues that Erie is required to do so. The insurance policies relate to an underlying lawsuit filed in the Circuit Court of Kanawha County, West Virginia, in which Appalachian is a defendant.

For the reasons stated herein, the Court **GRANTS** Erie's motion [ECF No. 32], **DENIES** Appalachian's motion [ECF No. 30], and

MEMORANDUM OPINION AND ORDER

**DECLARES** that Erie has no duty to defend or indemnify Appalachian in the underlying state court litigation.[1]

## I.  <u>PROCEDURAL HISTORY</u>

Erie filed a petition for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against Appalachian on July 1, 2020.  ECF No. 1.  On August 19, 2020, Appalachian filed an answer and a counter-petition for declaratory judgment.  ECF No. 6.  Erie answered the counter-petition on September 8, 2020.  ECF No. 8.

Erie and Appalachian both moved for summary judgment on January 15, 2021, and the motions were fully briefed.  ECF Nos. 19, 20.  On November 19, 2021, Appalachian filed a motion for leave to file an amended answer and counter-petition.  ECF No. 29. Appalachian then filed a renewed motion for summary judgment on November 29, 2021.  ECF No. 30.  The next day, Erie did the same. ECF No. 32.  The motions are fully briefed and ripe for review.

## II.  <u>FACTS</u>

Appalachian owns and operates the Kelly Mountain Quarry near Elkins, West Virginia, where Appalachian engages in producing, selling, and delivering stone products throughout West Virginia. ECF No. 1, Pet., ¶¶ 5-6.  Appalachian loads various stone products

---

[1] Given the filing of renewed summary judgment motions by both parties, the parties' original summary judgment motions are **DENIED AS MOOT** [ECF Nos. 19, 20].

Erie v. Appalachian                                         2:20cv17

<u>MEMORANDUM OPINION AND ORDER</u>

into dump trucks, and the dump trucks transport the products to customers.  <u>Id.</u> ¶ 7.

### a.   <u>The Underlying Lawsuit</u>

On January 31, 2020, Carol Sue Huffman ("Huffman") filed a complaint against Appalachian, Flanigan, and Charles W. Beckner ("Beckner") in the Circuit Court of Kanawha County, West Virginia, Civil Action No. 20-C-112 (the "Underlying Suit").  ECF No. 1-1, Exh. A.  Huffman alleges on or about October 2, 2019, she was traveling southbound on Route 20 in Upshur County, West Virginia, when she passed a dump truck owned by Flanigan and operated by Beckner.  <u>Id.</u> ¶¶ 8-12.  A stone fell off the back of the dump truck and flew through her windshield, striking and injuring her.  <u>Id.</u> ¶¶ 13-14.  Huffman's vehicle ran off of the road and struck a guard rail.  <u>Id.</u> ¶ 14.

Huffman asserts a claim of negligence against Appalachian, Flanigan, and Beckner for failing to properly load the stones to the back of the dump truck.  <u>Id.</u> ¶ 16-38.  Specifically, Huffman alleges that Appalachian's employees piled the stones well above the side rails of the dump truck and allowed the dump truck to leave its facility with the stones in a dangerous and unsecured state.  <u>Id.</u> ¶¶ 10-11.  Huffman alleges that Appalachian breached a duty to her when it negligently and recklessly allowed the dump

MEMORANDUM OPINION AND ORDER

truck to leave its facility when it was improperly and dangerously loaded and secured.  Id. ¶ 21.

Appalachian also filed a third-party complaint against Hardman Trucking, Inc. ("Hardman") and Roger Wiss ("Wiss") based on the assertion that Flanigan and Beckner were working for Hardman and under Hardman's control.[2]  Beckner testified in his deposition about his actions on October 2, 2019.[3]

b.   **Relevant Policy Language**

Coverage under three Erie policies is at issue: (1) a Commercial Auto Insurance Policy, Policy No. Q07-6530257, with a policy period of July 15, 2019, to July 15, 2020 ("Erie Auto Policy"); (2) a Business Catastrophe Liability Policy, Policy No. Q31-6570058, with a policy period of July 15, 2019, to July 15, 2020 ("Erie BCL Policy"); and (3) an Ultraflex Policy, incorporating a Commercial General Liability coverage form designated Policy No. Q43-6550140, with a policy period of July

---

[2] Appalachian has also sought coverage under policies of insurance issued to Hardman, which is the subject of a separate declaratory judgment action pending before this Court, Case No. 2:20-CV-36.

[3] That day, Beckner drove a dump truck owned by Flanigan to Kelly Mountain Quarry to pick up stone at the direction of Hardman.  ECF No. 30-2, Beckner Dep., 41:13-44:16.  Beckner described the process of picking up the stone, entering the quarry, weighing in at the inbound scale, driving to the rock pile to the front-end loader, and weighing in at the outbound scale, where he received his weight ticket.  Id. at 45:2-53:15.  He testified that the stone was loaded by a front-end loader.  Id. at 47:1-48:5.  Wiss, a second dump truck driver, was also getting a load of stone for Hardman. Id. at 146:1-147:22. While Beckner waited for Wiss, Beckner checked the load of stone that had just been placed in the bed of the Flanigan dump truck and rearranged some of the stones.  Id. at 70:3-71:22, 85:1-21, 87:17-88:6.

Erie v. Appalachian                                    2:20cv17

**MEMORANDUM OPINION AND ORDER**

15, 2019, to July 15, 2020 ("Erie GCL Policy"). ECF No. 1, Pet.,
¶¶ 17-23.

By a series of letters dated August 4, 2020, Erie agreed to
defend Appalachian in the Underlying Suit through the Erie Auto
Policy, under a reservation of rights. Id. ¶¶ 21-24. Erie advised
that it would monitor the suit and that it may be required to
respond to the demand for coverage in assessing the Erie BCL
Policy, and eventually advised Appalachian there was no coverage
through the Erie CGL Policy. Id.

## 1. **The Erie Auto Policy[4]**

Erie issued a commercial auto insurance policy to Flanigan.
The dump truck involved in the October 2, 2019, accident, was a
2012 Kenworth dump truck owned by Flanigan, with a VIN of
1NKDX4TXXCJ334949. ECF No. 1, Pet., ¶ 26. The dump truck is a
listed vehicle on the Declarations of the Erie Auto Policy issued
to Flanigan. ECF No. 1-2, Exh. 2, Declarations. Liability
coverage is as follows:

**LIABILITY PROTECTION**

**OUR PROMISE**

**Bodily Injury Liability**
**Property Damage Liability**

---

[4] The Court cites excerpts of the Erie Auto Policy as paragraphs identified in
the Petition for Declaratory Judgment, ECF No. 1. The Erie Auto Policy is also
attached in full as Exhibit 2 to the Petition for Declaratory Judgment, ECF No.
1-2.

MEMORANDUM OPINION AND ORDER

**We** will pay all sums **anyone we protect** legally must pay as damages caused by an **accident** covered by this policy. The **accident** must arise out of the ownership, maintenance, use, loading or unloading of an **auto we insure.**

Damages must involve:

1. bodily injury, meaning physical harm, sickness, or disease including care, loss of services or resultant death; or

2. property damage, meaning damage to or loss of use of tangible property.

Erie Auto Policy, ECF No. 1-2, at 6. "Anyone we protect" is defined in the Liability Protection Section:

### LIABILITY PROTECTION PERSONS WE PROTECT

**PERSONS WE PROTECT**

The term **"anyone we protect"** *means any person or organization listed below*:

1. **You,** for any **auto we insure;**

2. Anyone else while using an **auto we insure** with **your** permission, except:

a. the owner or anyone else from whom **you** borrow or hire an **auto we insure.** (This does not apply to a non-owned trailer connected to an owned auto.)

b. **your** employee if the **auto we insure** is owned by that employee or a member of the employee's household;

c.   anyone who uses an **auto we insure** in a business that sells, repairs, services or parks **autos**, unless the business is yours;

d.   anyone other than **your** employees, partners, a borrower or lessee or any of their employees, while loading or unloading an **auto we insure**;

e.   **your** partner while using an **auto** owned by that partner or a member of his or her household and not described on the **Declarations** or an **auto** that does not replace one so described.

3.   Anyone legally responsible for the conduct of **anyone we protect** as described above, to the extent of that responsibility.

Id. Erie points out the following definitions in its motion:

### DEFINITIONS

*Throughout **your** policy and its endorsement forms, the following words have a special meaning when they appear in bold type:*

- **"accident"** includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage.

### ADDITIONAL ERIE INSURANCE COMPANY AND ERIE INSURANCE PROPERTY AND CASUALTY COMPANY DEFINITIONS

*The following words have a special meaning in policies issued by the Erie Insurance Company and Erie Insurance Property and Casualty Company when they appear in bold type:*

> **"your"**, **"your"** and **"Named Insured"** means the person(s) or organization(s) named in Item 1 on the **Declarations**. Except in the **RIGHTS AND DUTIES - GENERAL POLICY CONDITIONS** Section, these words include **your** spouse if a resident of the same household.

<u>Id.</u> at 4, 5.

The dump truck is an "auto we insure." Erie maintains that coverage extends to "**anyone we protect** for bodily injury or property damage caused by an **accident** arising out of the ownership, maintenance, use, loading or unloading of an **auto we insure**." <u>Id.</u> ¶ 29. The claim against Appalachian in the Underlying Suit is based on Appalachian's alleged negligence in loading stones onto the dump truck owned by Flanigan. <u>Id.</u> ¶ 31.

Of course, the Erie Auto Policy includes exclusions applicable here:

**LIMITATIONS ON OUR DUTY TO PAY**

**What We Do Not Cover - Exclusions**

**We** do not cover:

7. bodily injury or property damage that results from the handling of property:

a. Before it is moved from the place where it is accepted by **anyone we protect** for loading into or onto an **auto we insure**; or

b.   After it is unloaded from an **auto we insure** to the place it is finally delivered by **anyone we protect**.

. . .

13. bodily injury or property damage that results from the handling, use or condition of any product made, sold or distributed by **anyone we protect** if the accident happens after **anyone we protect** has given up possession of the product.

Id. at 7-8. Bodily injury resulting from handling of property before it is moved and accepted by "anyone we protect" before loading into or onto an "auto we insure" is excluded from coverage. Erie maintains these claims are excluded under the Erie Auto Policy, and Appalachian is not entitled to coverage under the policy.

Finally, an "additional insured" is covered under the Erie Auto Policy:

**ADDITIONAL INSURED ENDORSEMENT**

**DEFINITIONS**

**"Additional Insured"** means the person or organization shown on the **"Declarations"** as an "ADDITIONAL INSURED."

**OUR PROMISE**

Under Liability Protection, **"we"** will pay all sums the **"Additional Insured"** legally must pay

MEMORANDUM OPINION AND ORDER

as damages arising out of the acts or omissions of:

1.   the **"Named Insured"** or any **"relative;"**

2.   any employee or agent of the **"Named Insured;"**

3.   any other person, except the **"Additional Insured"** or any employee or agent of the **"Additional Insured"**

using an **"auto we insure"** with the **"Named Insured's"** permission.

ECF No. 1-2, Additional Insured Endorsement. Appalachian is listed as an additional insured on the Declarations page.

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of

MEMORANDUM OPINION AND ORDER

proof." _Id._ at 317–18.  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986).

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge:

> However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." _Id._ at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." _Id._ at 250; _see also Charbonnages de France v. Smith_, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing _Stevens v. Howard D. Johnson Co._, 181 F.2d 390, 394 (4th Cir. 1950)).
>
> In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. _See Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the

MEMORANDUM OPINION AND ORDER

> material facts." Id. at 586. That is, once the
> movant has met its burden to show absence of
> material fact, the party opposing summary
> judgment must then come forward with
> affidavits or other evidence demonstrating
> there is indeed a genuine issue for trial.
> Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S.
> at 323-25; Anderson, 477 U.S. at 248. "If the
> evidence is merely colorable, or is not
> significantly probative, summary judgment may
> be granted." Anderson, 477 U.S. at 249
> (citations omitted).

Watson v. Warden, FCI Hazelton, No. 2:16-CV-76, 2017 WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

### IV.  APPLICABLE LAW

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas.

MEMORANDUM OPINION AND ORDER

& Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)).

Here, because the entry of a declaratory judgment will resolve the parties' dispute, the Court's exercise of jurisdiction over this matter is proper.  Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case is determined by the substantive law of the state in which a district court sits.[5]  The parties agree that the substantive law of West Virginia governs the interpretation and application of the insurance policy at issue.

**V.  ANALYSIS**

Erie requests both declaratory judgment and summary judgment against Appalachian.  Appalachian originally sought coverage under the Erie Auto Policy, the Erie CGL Policy, and the Erie BCL Policy. Appalachian concedes in its renewed motion for summary judgment that it is not entitled to coverage under the Erie CGL policy, so the Court will analyze only whether it is entitled to coverage under the remaining two policies.

Under West Virginia law, liability insurance policies establish two main duties on the part of the insurer, the duty to

---

[5]  It is undisputed that the parties are diverse and more than $75,000.00 is in controversy.  Thus, the Court has subject matter jurisdiction over this matter.  See 28 U.S.C. § 1332.

MEMORANDUM OPINION AND ORDER

defend and the duty to indemnify.  See, e.g., Aetna Cas. & Sur.
Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986); Donnelly v.
Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978).
As a general rule, an insurer's duty to defend is triggered when
"the allegations in the plaintiff's complaint are reasonably
susceptible of an interpretation that the claim may be covered by
the terms of the insurance policy." Pitrolo, 342 S.E.2d at 160;
see also Syl. Pt. 2, Farmers & Mechanics Mut. Ins. Co. of W. Va.
v. Cook, 557 S.E.2d 801 (W. Va. 2001) ("The interpretation of an
insurance contract, including the question of whether the contract
is ambiguous, is a legal determination . . . ."). If any of the
claims against the insured might trigger coverage, the insurer
must defend against all the claims asserted. See Horace Mann Ins.
Co. v. Leeber, 376 S.E.2d 581, 584 (W. Va. 1988) (citing Donnelly,
589 F.2d at 765). Nevertheless, the insurer need not provide a
defense if the claims against the insured are "entirely foreign to
the risk insured against." Air Force Ass'n v. Phoenix Ins. Co.,
No. 89-2317, 1990 WL 12677, at *2 (4th Cir. Feb. 5, 1990) (citing
Donnelly, 589 F.2d at 765).

     The specific wording of an insurance policy determines
whether it provides coverage for a particular claim.  See Beckley
Mechanical, Inc. v. Erie Ins. Prop. & Cas. Co., 374 F. App'x 381,
383 (4th Cir. 2010); Cherrington v. Erie Ins. Prop. and Cas. Co.,

14

MEMORANDUM OPINION AND ORDER

745 S.E.2d 508, 524 (W. Va. 2013).  Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, <u>Cherrington</u>, 745 S.E.2d 508 (internal quotations and citations omitted).  Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous.  <u>Id.</u> at Syl. Pt. 9.  Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a strained or philosophical sense."  <u>Polan v. Travelers Ins. Co.</u>, 192 S.E.2d 481, 484 (W. Va. 1972).

Here, Erie contends that under the plain and unambiguous terms of its policies, it is not required to defend or indemnify Appalachian because (1) Appalachian does not qualify as "anyone we protect" under the Erie Auto Policy, (2) the actions of Appalachian in loading stone onto the Flanigan dump truck are excluded under the "limitations on our duty to pay" exclusion in the Erie Auto Policy, (3) Appalachian's status as an additional insured under the endorsement in the Erie Auto Policy is not triggered by the event on October 2, 2019, and (4) Appalachian is not covered by the Erie BCL Policy because it does not provide liability coverage broader than the Erie Auto Policy.  The Court will address each argument in turn.

Erie v. Appalachian                                          2:20cv17

MEMORANDUM OPINION AND ORDER

      **a.**   **Appalachian does not qualify as "anyone we protect" under the Erie Auto Policy; therefore, Appalachian is precluded from coverage under the Erie Auto Policy.**

To determine whether Appalachian qualifies as "anyone we protect" under the Erie Auto Policy issued to Flanigan, the Court begins with the relevant text of the policy:

**LIABILITY PROTECTION**
**PERSONS WE PROTECT**

The term **"anyone we protect"** means any person or organization listed below:

1.   **You**, for any **auto we insure;**

2.   Anyone else while using an **auto we insure** with **your** permission, except:

a.   the owner or anyone else from whom you borrow or hire an **auto we insure.**  (This does not apply to a non-owned **trailer** connected to an **owned auto.**)

b.   **your** employee if the **auto we insure** is owned by that employee or a member of the employee's household;

c.   anyone who uses an **auto we insure** in a business that sells, repairs, services or parks **autos**, unless the business is **yours**;

d.   anyone other than **your** employees, partners, a borrower or lessee or any of their employees, while loading or unloading an **auto we insure**;

Erie v. Appalachian                                              2:20cv17

MEMORANDUM OPINION AND ORDER

> e.   your partner while using an **auto** owned by
> that partner or a member of his or her
> household and not described on the
> **Declarations** or an **auto** that does not replace
> one so described.
>
> 3.   anyone legally responsible for the
> conduct of **anyone we protect** as described
> above, to the extent of that responsibility.

Erie Auto Policy, ECF No. 1-2, p. 6.

### 1.   <u>Appalachian does not qualify as "you" under "persons we protect."</u>

The Erie Auto Policy defines "you," "your," and "Named Insured" as the "**Subscriber** and others named in Item 1 on the Declarations." ECF No. 1-2, p. 5. Item 1 of the Declarations identifies the Named Insured as "Flanigan Field Services LLC." ECF No. 1-2, Declarations. Accordingly, Appalachian does not qualify as "you" under "persons we protect."

### 2.   <u>Appalachian does not qualify as "[a]nyone else while using an auto we insure."</u>

Second, the motor vehicle accident subject of the Underlying Suit did not occur while Appalachian was using an "auto [Erie] insure[s]"; therefore, "[a]nyone else <u>while using</u> an auto we insure" does not cover Appalachian. "[W]hile using" is the time period imposed on coverage of anyone other than the named insured. The Supreme Court of Appeals of West Virginia has established a four-part test which is an "instructive guide[] for finders of

17

MEMORANDUM OPINION AND ORDER

facts to follow in evaluating whether an injury arose from the 'use' of a motor vehicle, and no one factor carries more weight than the others":

> [T]he court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

Syl. Pt. 2, Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438 (W. Va. 1998).

Cleaver involved a collision between a pedestrian and a moving vehicle on a state route. Id. at 439. The pedestrian exited his own vehicle and while crossing Route 45 on foot, he collided with the vehicle. Id. There was a passenger in the driver's car, and as a result of the crash, both the pedestrian and passenger died. Id. The passenger filed a wrongful death suit against the pedestrian and the driver. Id. The court wrote, "Under the terms of the Erie automobile liability policy, coverage exists *only* if [the passenger's] death is determined to have arisen out of the use of the [pedestrian's] vehicle." Id. at 440 (emphasis in original). The Court found that "[u]pon parking his car and

<u>MEMORANDUM OPINION AND ORDER</u>

exiting the vehicle, [the pedestrian] had fulfilled the purpose for which he was utilizing his car" under the policy and "conclude[d] that the [pedestrian's] vehicle was not in 'use' at the time of the accident." <u>Id.</u> at 442.

Appalachian was not "using" the Flanigan dump truck under the plain and unambiguous terms of Erie's policy at the time of the motor vehicle accident. <u>See</u> Syl. Pt. 2, <u>Cleaver</u>, 502 S.E.2d 438. First, Appalachian was not "in reasonably close proximity to the [dump truck] at the time of the accident." Second, Appalachian was not "oriented" toward the dump truck. Third, Appalachian "had relinquished control of the vehicle" when the accident occurred. Fourth, Appalachian "was [not] engaged in a transaction reasonably related to the use of the vehicle at the time of the accident."

The claim against Appalachian in the Underlying Suit is based on Appalachian's alleged breach of duty in loading stones onto the dump truck owned by Flanigan.  When the accident occurred, Appalachian's interaction with the dump truck – the loading – had ceased.  Because Appalachian did not qualify as "anyone we protect" once it was no longer loading the dump truck, and because Appalachian was not using the dump truck when the incident triggering liability occurred, Appalachian is precluded from coverage under the Erie Auto Policy.

Erie v. Appalachian                                              2:20cv17

<u>MEMORANDUM OPINION AND ORDER</u>

Appalachian unsuccessfully argues that the use of the term "while" with "using" renders the Erie policy ambiguous when viewing the policy insuring agreement and the exclusionary language together.  The insuring provision for liability coverage is in accordance with the Liability Protection Section of the Commercial Auto Policy coverage form and states, in part:

**LIABILITY PROTECTION**

**OUR PROMISE**

**Bodily Injury Liability**
**Property Damage Liability**

**We** will pay all sums **anyone we protect** legally must pay as damages caused by an **accident** covered by this policy. The **accident** must arise out of the ownership, maintenance, use, loading or unloading of an **auto we insure.**

Erie Auto Policy, ECF No. 1-2, at 6. Appalachian cites to West Virginia Code § 33-6-31(a), arguing that Erie is required to provide broad liability coverage and has failed, and that the "arise out of" language in the Bodily Injury Liability Property Damage Liability section contravenes the "while using" language contained in Persons We Protect section.  The Court, however, finds that the policy is unambiguous.  Because Appalachian was not "using" the automobile while the incident triggering liability occurred, Appalachian is not covered by the policy.

MEMORANDUM OPINION AND ORDER

> **3.  Appalachian does not qualify as "anyone other than your employees, a partner, a borrower or lessee or any of their employees, while loading or unloading an auto we insure."**

Under the Erie Auto Policy, "anyone we protect" does not include anyone other than Flanigan, as the named insured, or its employees, partners, or borrowers or lessees of its employees for liability arising out of the loading or unloading of an insured vehicle. Erie Auto Policy, ECF No. 1-2, p. 6.  It is undisputed that Appalachian is not an employee, partner, or borrower or lessee of an employee of Flanigan.  Therefore, Appalachian is not entitled to coverage under the Erie Auto Policy "while loading or unloading" an automobile insured by Erie.

> **b.  The Erie Auto Policy excludes Appalachian's act of loading the Gabian stone onto the Flanigan dump truck under the "limitations on our duty to pay" exclusion.**

Alternatively, Erie disputes coverage for Appalachian's action of loading the stone onto the dump truck under the "limitations on our duty to pay" exclusion in the Erie Auto Policy. The Erie Auto Policy contains the relevant exclusion:

**LIMITATIONS ON OUR DUTY TO PAY**

**What We Do Not Cover – Exclusions We** do not cover:

7.  bodily injury or property damage that results from the handling of property:

    a.   before it is moved from the place where it is accepted by **anyone we protect** for loading into or onto an **auto we insure**; or

    b.   after it is unloaded from an **auto we insure** to the place it is finally delivered by **anyone we protect**.

            . . .

    13. bodily injury or property damage that results from the handling, use or condition of any product made, sold or distributed by **anyone we protect** if the accident happens after **anyone we protect** has given up possession of the product.

Erie Auto Policy, ECF No. 1-2, pp. 7-8.

Here, Exclusion 7 applies.  The actions of Appalachian in loading stone onto the Flanigan dump truck occurred at its facility and before the stone was moved from the place where it was accepted by Flanigan.  Per Exclusion 7, bodily injury resulting from handling of property before it is moved and accepted by "anyone we protect for loading into or onto an auto we insure" (precisely the allegations against Appalachian in the Underlying Suit) is excluded from coverage.

Exclusion 13 also applies.  The Underlying Suit brings claims against Appalachian for "bodily injury . . . that results from the handling" of the Gabian stones after Appalachian had "given up

Erie v. Appalachian                                    2:20cv17

MEMORANDUM OPINION AND ORDER

possession of the product." Appalachian, therefore, is barred

from coverage pursuant to Exclusions 7 and 13.

> ### c. **Appalachian's status as an additional insured under the endorsement in the Erie Auto Policy is not triggered by the event on October 2, 2019.**

The Erie Auto Policy contains the following endorsement as to

Appalachian's status as an additional insured:

### ADDITIONAL INSURED ENDORSEMENT

**DEFINITIONS**

"**Additional Insured**" means the person or organization shown on the "**Declarations**" as an "ADDITIONAL INSURED."

**OUR PROMISE**

Under Liability Protection, "**we**" will pay all sums the "**Additional Insured**" legally must pay as damages arising out of the acts or omissions of:

1. the "**Named Insured**" or any "**relative;**"

2. any employee or agent of the "**Named Insured;**" or

3. any other person, except the "**Additional Insured**" or any employee or agent of the "**Additional Insured**"

using an "**auto we insure**" with the "**Named Insured's**" permission.

ECF No. 1-2, Additional Insured Endorsement.

<u>MEMORANDUM OPINION AND ORDER</u>

Appalachian briefly argues estoppel against Erie because Erie failed to include the Additional Insured Endorsement in its reservation of rights. Substantively, Appalachian argues the Additional Insured Endorsement controls and provides coverage for Appalachian because "where an 'endorsement conflicts with the main policy, the endorsement controls.'" <u>Allied World Surplus Lines Ins. Co. v. Day Surgery Ltd. Liab. Co.</u>, 451 F.Supp.3d. 577, 590 (S.D.W. Va. 2020) (internal citation and quotation marks omitted). It further requests this Court declare the policy ambiguous due to these "conflicting provisions."

There is no ambiguity here. The Additional Insured Endorsement extends liability coverage for an additional insured when the additional insured must pay damages arising out of the acts of the Named Insured (Flanigan) or any other person other than the Additional Insured (Appalachian). However, the Underlying Suit is based on a negligence claim asserted against Appalachian for its alleged breach of a duty to safely and properly load the dump trucks carrying the stone products from the quarry to the contracted destination. These allegations are based on acts and omissions by Appalachian itself, which is explicitly precluded by the Additional Insured Endorsement.

It is a "well-established proposition that the rights of additional insureds are limited by the terms and conditions of

<u>MEMORANDUM OPINION AND ORDER</u>

[the insurance policy]." <u>Nautilus Ins. Co. v. Johnny Clark Trucking, LLC</u>, No. 2:12-cv-06678, 2014 WL 1365836, at *10 (S.D.W. Va. Mar. 20, 2014) (internal citation and quotation marks omitted). Accordingly, because the Court finds that the claims asserted by Huffman against Appalachian are based on Appalachian's own acts or omissions (Count I — Negligence), the Additional Insured Endorsement expressly excludes that claim from the scope of coverage.  Because Appalachian does not qualify as "anyone we protect" for purposes of the general insuring provisions of the policy, it is not entitled to coverage as an additional insured.

> ### d.   **Appalachian is not covered by the Erie BCL Policy because it does not provide liability coverage broader than the Erie Auto Policy.**

Flanigan's excess policy, the Erie BCL Policy, provides liability umbrella coverage in excess of the Erie Auto Policy and Erie CGL Policy.  The Erie BCL Policy provides coverage no broader than that provided by the underlying insurance.  Therefore, Appalachian is likewise excluded from coverage under the Erie BCL Policy.

### VI.   <u>CONCLUSION</u>

For the reasons discussed, the Court concludes that under the plain and unambiguous terms of its policies, Erie is not required to defend or indemnify Appalachian.  Accordingly, the Court **GRANTS** Erie's renewed motion for summary judgment [ECF No. 32] and

MEMORANDUM OPINION AND ORDER

**DECLARES** that it has no duty to defend or indemnify Appalachian on the claims alleged in the Underlying Suit pursuant to the Erie Auto Policy, the Erie BCL Policy, or the Erie CGL Policy. Appalachian's renewed motion for summary judgment is **DENIED** [ECF No. 30]. Appalachian's motion for leave to file an amended pleading is **DENIED** [ECF No. 29]. The Court finds that granting leave to amend would be futile for the reasons discussed herein. Further, the motion to expedite is **DENIED AS MOOT** [ECF No. 42]. Pursuant to Federal Rule of Civil Procedure 54(b), and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment order in favor of Erie. This action is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

The Court further **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order and the judgment order to counsel of record.

**DATED:** September 22, 2022

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA